IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Nikolaos Bouboulis,

       Plaintiff,

v.

Scottsdale Insurance Company,

       Defendant.

CIVIL ACTION NO.

1:10-cv-2972-JEC

## ORDER AND OPINION

This case is presently before the Court on defendant's Motion for Judgment on the Pleadings [13]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion for Judgment on the Pleadings [13] should be **GRANTED**.

## BACKGROUND

This case arose from defendant Scottsdale Insurance Company's refusal to pay damages for personal injuries sustained by plaintiff Nikolaos Bouboulis. In 2006, Metro Elevator Service entered into a year-long contract with DeKalb County to service, repair, and maintain the safety of DeKalb County's elevators (the "DeKalb County-Metro Elevator Contract"). (Am. Compl. [5] at ¶¶ 5-7.) Under this contract, Metro was required to provide liability insurance for all work it performed on the elevators, and this coverage had to be in

effect before Metro could begin work. (*Id.* at ¶¶ 9-11.) To this end, on May 9, 2006, Metro obtained the required liability insurance coverage with a policy issued by defendant (the "Scottsdale Policy"). (*Id.* at ¶ 11; Scottsdale Policy, attached to Def.'s Mot. for J. on the Pleadings ("DMJP") [13] at Common Policy Declarations, Item 2.)

Through the Scottsdale Policy, defendant agreed to insure Metro and DeKalb County, as the named insured and additional insured, respectively, for any damages that the latter were required to pay for bodily injury arising from Metro's work. (Am. Compl. [5] at ¶¶ 15-16, 25-26.) This agreement was supplemented by the incorporation of the DeKalb County-Metro Elevator Contract into the Scottsdale Policy, as an "Insured Contract," wherein Metro agreed to accept responsibility and hold DeKalb County harmless for injuries to persons resulting from its work. (*Id.* at ¶¶ 17, 21.) The Scottsdale Policy period, which ran from May 9, 2006-May 9, 2007, was to last for the entire length of the DeKalb County-Metro Elevator Contract. (Am. Compl. [5] at ¶¶ 6, 11, 14.)

After obtaining the Scottsdale Policy, defendant issued a certificate of insurance to DeKalb County, naming DeKalb County as the Certificate Holder (the "Certificate of Insurance"). (*Id.* at ¶¶ 12, 13.) The Certificate of Insurance attested that Metro was covered by liability insurance for work performed during the policy

period. (*Id.*) DeKalb County relied on the Certificate of Insurance as proof of Metro's liability insurance coverage. (*Id.* at ¶ 14.)

To finance the Scottsdale Policy, Metro entered into an agreement with Charleston Premium Finance Company (the "Premium Finance Agreement"). (*Id.* at ¶ 38.) Under the Premium Finance Agreement, Charleston Premium Finance Company ("Charleston") obtained a power-of-attorney that gave it the authority to act on behalf of Metro to cancel the Scottsdale Policy in the event Metro failed to pay its premiums. (Am. Compl. [5] at ¶ 39.)

Metro apparently ceased, early on, making any payments to Charleston, as the latter, through its power of attorney, notified defendant of the cancellation of the Scottsdale Policy on July 1, 2006. (*Id.* at ¶ 41.) The notice of cancellation instructed the defendant that, as the insurer, it might be obligated to notify others that Metro was no longer covered by insurance. (*Id.* at ¶ 42.) Neither Metro nor the defendant notified DeKalb County of the cancellation of the Scottsdale Policy, however, presumably leaving DeKalb County unaware that Metro was without liability insurance. (*Id.* at ¶¶ 49-52.) As the issuer of the now invalid Certificate of Insurance, defendant likewise never attempted to correct DeKalb's reliance on the Certificate as verification of insurance. (*Id.* at ¶¶ 53-54, 60-61.)

3

Metro thus continued to perform elevator work for DeKalb County, despite not carrying any insurance. (Am. Compl. [5] at ¶¶ 55-56.) Had DeKalb County been aware that the Scottsdale Policy and the Certificate of Insurance had been cancelled, it could have either demanded that Metro comply with the DeKalb County-Metro Elevator Contract or discharged Metro and replaced it with an elevator service company that carried insurance. (*Id.* at ¶¶ 57-58.)

Metro's inability to make its insurance premium payments was only the beginning of what appears to have been irresponsible conduct on its part. On November 17, 2006, a negligently maintained elevator in the Callaway Building malfunctioned, seriously injuring its passenger, DeKalb County employee, and plaintiff, Nikolaos Bouboulis. (*Id.* at ¶ 20.)

Plaintiff brought suit for these injuries against Metro and its president and chief executive officer, Clifford Ward, in the State Court of DeKalb County, Georgia. (*Id.* at ¶ 27.) Clifford Ward vanished and all attempts to serve him with process have failed. (*Id.* at ¶ 28.) With Ward's disappearance, Metro mounted no defense to plaintiff's lawsuit. Although given notice of the suit as the insurer, defendant declined to respond or provide representation on Metro's behalf, and a trial on damages resulted in a judgment of $680,000 against Metro. (Am. Compl. [5] at ¶¶ 30-34.)

4

Plaintiff thereafter submitted a demand to defendant Scottsdale Insurance Company for payment of the damages award. (*Id.* at ¶ 35.) Defendant denied coverage and refused to pay plaintiff any portion of the damages awarded. (*Id.* at ¶ 36.) Plaintiff then brought suit against defendant in the Superior Court of DeKalb County on August 20, 2010. (Compl. [1].) On September 17, 2010, the action was removed to this Court on the basis of diversity jurisdiction. (Notice of Removal [1].)

After removal, plaintiff submitted an Amended Complaint [5] asserting claims for breach of contract, promissory estoppel, negligence, and attorneys' fees. Defendant filed its Motion for Judgment on the Pleadings [13], seeking dismissal of plaintiff's complaint on all counts.

## DISCUSSION

### I. STANDARD FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(c)

After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings. FED. R. CIV. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *Cunningham v. Dist. Att'ys Office for Escambia*

*Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010);. If matters outside the pleadings are "presented to and not excluded by the court, the motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56." FED. R. CIV. P. 12(d). Nonetheless, the Court may consider documents attached to a 12(c) motion without converting into a summary judgment motion if the documents are "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Roma Outdoor Creations, Inc. v. City of Cumming*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008); *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010). Thus, a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). In applying this standard, factual allegations are accepted as true, but the same benefit is not afforded to bare "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). When the plaintiff provides enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the complaint is "plausible on its face." *Id.* "Labels and conclusions" and a "formulaic recitation of the elements

6

of a cause of action" are insufficient to raise a right to belief above the "speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1]

## II. <u>BREACH OF CONTRACT CLAIM: STANDING TO SUE AS A THIRD-PARTY BENEFICIARY</u>

Plaintiff brings his breach of contract claim as a purported third-party beneficiary under O.C.G.A. § 9-2-20(b). (Am. Compl. [5] at ¶ 67.) He alleges that defendant unlawfully failed to pay insurance benefits owed under the Scottsdale Policy because defendant's cancellation of the Scottsdale Policy was not effective as to DeKalb County, which was an "additional insured," or as to plaintiff, as a purported third-party beneficiary of the Scottsdale Policy. (*Id.* at ¶¶ 68-69.) Defendant's failure to cover plaintiff's damages award, as well as its failure to notify DeKalb County about the cancellation of Metro's policy, also breached the duty of good faith and fair dealing. (*Id.* at ¶ 70.) Defendant challenges

---

[1] The parties rely on authority appearing before the *Conley* standard was "retired" by the Supreme Court of the United States in *Twombly*, 550 U.S. at 579. Under the *Conley* standard, dismissal of a complaint under Rules 12(b)(6) or 12(c) was permissible only if "it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim that which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As the standard for Rule 12(b)(6) applies equally to Rule 12(c), the *Iqbal/Twombly* rule governs the resolution of defendant's motion for judgment on the pleadings. *Roma*, 558 F. Supp. 2d at 1284 (explaining shared standard for 12(b)(6) and 12(c) motions). *See also Gentilello*, 627 F.3d at 543-44 (applying *Iqbal/Twombly* to Rule 12(c) motion).

AO 72A
(Rev.8/82)

plaintiff's purported status as a third-party beneficiary and therefore his standing to assert this claim.

Standing is a jurisdictional threshold that requires the plaintiff to demonstrate, among other things, the invasion of some legally protected interest. *AT&T Mobility, LLC v. NASCAR, Inc.*, 494 F.3d 1356, 1359-60 (11th Cir. 2007). "The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law." *Id.* at 1360.[2]

O.C.G.A. § 9-2-20(a) provides that, as a general rule, an action on a contract may be brought only by "the party in whom the legal interest in the contract is vested." The statute does recognize, however, that the "beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract. O.C.G.A. § 9-2-20(b). Plaintiff claims standing as a third-party beneficiary under § 9-2-20(b).

Typically, for a plaintiff to have standing to enforce a contract made between other parties, "it must appear clearly on the face of the contract that it was intended for the benefit of the [plaintiff]." *Crisp Reg'l Hosp., Inc. v. Oliver*, 275 Ga. App. 578, 583 (2006). That the plaintiff would benefit from performance of the agreement is not sufficient, by itself. *Id.* As a general rule, liability claimants are not usually regarded as third-party

---

[2] The parties appear to agree that Georgia law governs this dispute.

8

beneficiaries of liability policies. *Id.* at 583. A putative plaintiff who was not a party to a liability insurance contract typically cannot sue the insurer directly unless: (1) the plaintiff has an unsatisfied judgment against an insured of the insurer, (2) the legislature has authorized direct action against the insurer, or (3) direct action is permitted by a provision in the insurance policy at issue. *Richards v. State Farm Mut. Auto. Ins. Co.*, 252 Ga. App. 45, 45 (2001).

The Court examines these three potential grounds for a party to claim third-party beneficiary status, and applies them to this case.

A.   <u>Third-Party Standing To Collect The Unsatisfied Judgment Of An Insured</u>

When a third party obtains a judgment against an insured that fixes the liability of the latter, an action may be maintained directly against the insurer for the proceeds of the policy. *Smith v. Gov't Emps. Ins. Co.*, 179 Ga. App. 654, 655 (1986). The Scottsdale Policy implicitly acknowledges this rule when it provides that a "person or organization may sue [defendant] to recover on an agreed settlement or on a final judgment against an insured...." (Am. Compl. [5] at ¶¶ 25-26.) Thus, if plaintiff had obtained a judgment against an insured of defendant, he would be able to pursue his claim against the defendant insurer for the proceeds of that judgment. *Davis v. Nat'l Indem. Co.*, 135 Ga. App. 793, 795 (1975)(policy provision requiring insurer to pay if judgment is entered against the insured confers third-party standing).

9

There are only two possible insureds in this case: Metro, the negligent elevator maintenance service, and DeKalb County, the "additional insured" that contracted with Metro for elevator maintenance in its buildings. Plaintiff did receive a judgment against Metro. Unfortunately, at the time of plaintiff's accident, Metro was no longer an insured under defendant's policy, having apparently ceased paying premiums long before that time and therefore having had its policy cancelled. Indeed, the Amended Complaint makes no factual allegations that the cancellation of the Scottsdale Policy was invalid as to Metro. As such, plaintiff is unable to sue defendant to recover for a judgment against Metro.

As to the only other potential insured, DeKalb County, plaintiff, in effect, is arguing that the cancellation of the insurance policy by defendant was invalid as to DeKalb because defendant never notified the latter that Metro's policy was being cancelled. Even were DeKalb County able to make this argument on its own behalf, the plaintiff obtained no judgment against the county. Without a judgment against DeKalb County, plaintiff cannot latch onto DeKalb's purported status as an insured to initiate a direct suit against the defendant insurer.

In short, plaintiff may not succeed against the defendant insurer under a principle that permits a third-party to sue directly an insurer to recover the unsatisfied judgment of an insured.

10

B.    <u>Third-Party Standing Through Legislative Authority</u>

A third-party can also sue directly an insurer for injuries suffered at the hands of an insured when legislation so permits. Legislatively-mandated exceptions to the general prohibition on third-party standing are sparse, however, and arise primarily in the context of personal injuries caused by motor vehicles. *See Richards*, 252 Ga. App. at 45-46 (collecting legislatively-mandated exceptions).

In support of his claim that he derives third-party beneficiary status through state law and state regulations,[3] plaintiff cites to a Georgia Department of Labor Rule that purports to mandate insurance coverage for elevator contractors seeking to do business in the State of Georgia. Georgia Department of Labor Rule 300-3-6-.22(1) requires a Class II elevator contractor, which is what Metro was, to submit to the Department of Labor proof of liability insurance in an amount of at least one million dollars minimum coverage. Sanctions for failure to comply include a civil fine or suspension of one's permit. GA. COMP. R. & REGS. 300-3-6-.10.[4]

Plaintiff is therefore correct that there is a state regulation requiring an elevator contractor to show proof of liability

_____

[3]   Am. Compl. [5] at ¶ 69.

[4]   This regulation is included in the "Employment and Security Law" subsection of the Georgia Department of Labor Rules. Most chapters under this title are directed at ensuring safety in the workplace.

AO 72A
(Rev.8/82)

insurance.[5]  This administrative rule, which authorizes only a civil fine against a disobedient elevator contractor, is in sharp contrast with statutes that not only mandate liability coverage for a particular activity, but also expressly authorize a non-insured to sue the insurer, as a third-party beneficiary.  *See Sapp v. Canal Ins. Co.*, 288 Ga. 681 (2011)(discussing former Motor Carrier Act, O.C.G.A § 46.7-12(c), its requirement that a common carrier carry motor carrier insurance, and its provision allowing direct action against the insurer by a third-party non-insured); O.C.G.A. § 20-2-1090(requiring school boards to obtain insurance that will insure school children riding the bus against injury; § 20-2-1092 (authorizing school board to purchase insurance to protect the general public against accidents involving school buses and to include provision in insurance policy permitting a direct action against insurer by an injured member of the  general public); *Nat'l Indem. Co. v. Tatum*, 193 Ga. App. 698, 699-700 (1989)(describing distinction between unequivocal creation of direct statutory cause of action against insurer by third party under a statute that permitted same, and a mere statutory directive that an entity is subject to

---

[5]  The rule is quite weak, however.  It requires a contractor to submit a copy of an insurance policy to the Department, else face a fine, but the rule says nothing about an ongoing duty to <u>maintain</u> insurance coverage by an elevator contractor.  Here, as noted, Metro did have insurance coverage, albeit briefly.  The problem was that, once it got the contract with DeKalb County, Metro ceased paying its premiums.  The rule does not explicitly cover this scenario.

AO 72A
(Rev.8/82)

public service commission administration rules, which does not give rise to a direct right to sue insurer by third-party).

In short, although a Georgia regulation requires an elevator contractor to obtain liability insurance, no Georgia statute authorizes a third-party, injured through the acts of the contractor, to sue directly the latter's insurer. Accordingly, the Court concludes that plaintiff cannot gain third-party beneficiary status as a result of legislative authority.

C. <u>Third-Party Standing Under The Express Terms Of The Agreement</u>

Finally, a person who was not a party to the insurance contract can sue directly an insurer if the insurance contract so permits. In order for a third party to have standing to enforce, or reform, a contract, "it must appear clearly from the contract that it was intended for the benefit of the third party. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient." *Satilla Cmty. Serv. Bd. v. Satilla Health Servs., Inc.*, 275 Ga. 805, 810 (2002)(citations omitted). To evince such intent, there must be a "promise by the promisor to the promisee to render some performance to [the] third person, and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary." *AT&T Mobility, LLC*, 494 F.3d at 1361 (citing *Danjor, Inc. v. Corporate Constr., Inc.*, 272 Ga. App. 695, 697 (2005)). A third-party beneficiary has only those rights as granted to the parties under the contract and no greater. *Allstate*

13

*Ins. Co. v. Sutton*, 290 Ga. App. 154, 160 (2008). Construction of the contract is generally required to determine the extent of the third-party's rights. *Id.* at 160-161.

Plaintiff has cited no language in the Scottsdale Policy that would authorize a member of the public who is injured by Metro to sue the defendant insurer on that ground. The policy only requires the defendant insurer to cover Metro or DeKalb County against liability claims. Plaintiff relies, however, on a contract ("Insured Contract" or "the DeKalb County-Metro Elevator Contract") between DeKalb County and Metro. Plaintiff avers that the Policy incorporated the contract.[6] (Am. Compl. [5] at ¶ 17.) As noted, the Scottsdale Policy requires defendant to pay for certain covered injuries caused by Metro. (*Id.* at ¶ 25.) The DeKalb County-Metro Elevator Contract requires Metro to hold DeKalb County harmless for any injury arising from Metro's work. (*Id.* at ¶ 21.) The latter contract also indicates that any work performed by Metro on DeKalb County's elevators was done for the "benefit and protection of its employees and members of the public who use the elevators." (*Id.* at ¶ 5.) Plaintiff argues that, because the contract between DeKalb County and Metro Elevator Contract states that the purpose of Metro's work was to benefit and protect people who used the elevators and because this

---

[6] The Court will assume that this statement is true. Yet, as plaintiff has not seen fit to attach a copy of that contract into any pleading in this litigation, it is difficult for the Court to assess what impact that contract might have.

14

contract was incorporated into the Scottsdale Policy, this means that the Policy afforded plaintiff status as a third-party beneficiary. (*Id.* at ¶¶ 22-24.)

Plaintiff's contention, however, is not supported by Georgia law. *See Burton v. DeKalb Cnty.*, 209 Ga. App. 638, 639 (1993)(contractual agreement between DeKalb County and State Department of Human Resources to maintain and repair premises did not demonstrate parties' intention to compensate any member of public for injurious consequences, even if plaintiff was employee of one of the parties to contract); *Googe v. Fla. Int'l Indem. Co.*, 262 Ga. 546, 548 (1992)(declining to find that general public is intended beneficiary of liability contract purchased by municipality where insurance coverage was not legislatively mandated); *Payne v. Twiggs Cnty. Sch. Dist.*, 269 Ga. 361, 364 (1998)("Liability insurance claimants generally are not regarded as third-party beneficiaries of insurance policies."). *Contra Whitaker v. Lee Mem'l Health Sys.*, 177 Fed. App'x 892, 895 (11th Cir. 2006)(holding that, under *Conley* standard, plaintiff's allegation that he was intended third-party beneficiary was sufficient to surpass motion to dismiss).

While the Insured Contract is incorporated by reference into the Scottsdale Policy, the Scottsdale Policy,[7] as a general matter, does

---

[7]     The Court may consider the Scottsdale Policy without converting the present motion into one for summary judgment if the policy is central to plaintiff's claim and its contents are undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). No party disputes the authenticity of the agreement and the

15

not cover any contractual liability of an insured.[8]  There is an exception as to liability for damages "assumed in a contract or agreement that is an 'insured contract.'" (Scottsdale Policy [13-2] at Commercial General Liability Coverage Form, Section I(2)(b)(2).) "An elevator maintenance agreement" is an "insured contract." *Id.* at Section V(9)(e).

The question then is what liability did DeKalb County assume in its contract with Metro, and the answer is none.  While Metro's work was described as being done for the public good, DeKalb did not, in this language, assume liability for any negligence by Metro.[9]

---

entitlement to insurance proceeds under the Scottsdale Policy is central to plaintiff's claim. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)(explaining that "undisputed" in this context means that no party has challenged the authenticity of the document).  The Scottsdale Policy may also be considered even though it is not physically attached to plaintiff's Amended Complaint.  *Id.* ("Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it [is central to plaintiff's claim]").

> [8] "2. Exclusions
>         This insurance does not apply to:
>         b. Contractual Liability
>                 'Bodily injury' for which the insured is obligated
>                 to pay damages by reason of the assumption of
>                 liability in a contract."

(Scottsdale Policy [13-2] at Commercial General Liability Coverage Form, Section I(2)(b).)

[9] Of course, it does not matter whether or not Metro assumed any liability for injuries suffered by the public through this boilerplate paragraph.  Metro was already on the hook, on a potential tort claim, for any damages caused by its negligence.  Moreover, as noted, plaintiff does not disagree that Metro's status as an insured

16

Accordingly, the Court concludes that the express terms of the Policy do not give rise to third-party beneficiary status for plaintiff.

D. <u>Even If Plaintiff Were a Third-Party Beneficiary, There Was No Contract In Existence Against Which The Plaintiff Could Assert A Claim</u>

Even assuming that plaintiff was a third-party beneficiary under any of the three theories discussed above, this status cannot help plaintiff because there was no insurance contract in existence between the defendant insurer and either Metro or DeKalb County at the time of plaintiff's injury on the malfunctioning elevator. As noted, Metro stopped paying its premiums almost immediately upon the issuance of the insurance policy. For that reason, its policy was cancelled. There being no policy in effect when plaintiff was injured several months later, plaintiff cannot prevail, as a third-party beneficiary has only those rights granted to the parties to the contract, and no more. *See supra* at 13. In other words, because DeKalb County would have been unable to seek from defendant coverage of any damage award against it as a result of Metro's negligence, plaintiff unfortunately finds himself in the same position.

Given this fact, plaintiff is left only with an argument that the cancellation of the policy by defendant was invalid as to DeKalb County, because defendant failed to give notice to DeKalb of the cancellation of the policy. Plaintiff cites to O.C.G.A. § 33-22-

---

had ended by the time of the accident.

17

13(d), which sets out when an insurer is required to give notice of cancellation to third parties, such as DeKalb County. O.C.G.A. § 33-22-13(d), requires notice where "statutory, regulatory, and contractual restrictions provid[e] that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party...." (emphasis added). If the proper notice procedures are not followed, cancellation can be deemed ineffective. *See Atlanta Cas. Co. v. Boatwright*, 244 Ga. App. 36, 38 (2000)("The notice requirements of the statutes regarding cancellation of insurance policies are mandatory and require strict compliance and failure to adhere to the requirements results in noncancellation of the policy.").

Plaintiff does not argue that the insurance policy required notification to DeKalb County of any cancellation.[10] He notes, however, that DeKalb County is a "governmental agency" or "other third party," and that a "regulatory restriction"--to wit, Department of Labor Rule 300-3-6-.22--required that DeKalb County should have been notified when Metro's policy was cancelled.[11]

---

[10] Although the parties have not briefed the matter, the Court notes that an amendment to the policy provides that the defendant only has to notify the named insured, Metro, in order to cancel the policy. (Amendatory Endorsements (A)(2)[13-2 at 34.) It would have been helpful to the users of the elevator if DeKalb County had insisted that it, as an additional insured, also be notified.

[11] In the usual case, the defaulting insured (Metro) has no standing to argue that its contract should not be terminated until after a third party has received notice. *See Mass. Bay Ins. Co. v. Photographic Assistance Corp.*, 732 F. Supp. 1572, 1577 (N.D. Ga.

18

As explained above, Department of Labor Rule 300-3-6-.22(1) requires a Class II elevator contractor, like Metro, to submit proof of insurance bearing certain minimum coverages, or face a civil fine. *Id.* at § 300-3-6-.10. Unfortunately for plaintiff, however, the Rule does not require an insurance company to provide notification to the Department of Labor or anyone else prior to cancelling the policy. For this reason, O.C.G.A. § 33-22-13(d) is of no help to plaintiff. *Cf. see Kolencik v. Stratford Ins. Co.*, 195 Fed. App'x 855, 856-57 (11th Cir. 2006)(discussing Public Service Commission regulations prohibiting cancellation of insurance coverage until state is notified of cancellation by insurer).

As neither a statute, regulation, or contractual restriction required that DeKalb County be notified when defendant cancelled the policy, plaintiff cannot successfully argue that this cancellation was invalid as to DeKalb. Because the policy was validly cancelled, any third-party beneficiary status that the plaintiff might otherwise possess cannot provide him coverage under the policy.

For all the above reasons, defendant's Motion for Judgment on the Pleadings [13] is **GRANTED** as to Count I.[12] This result is really

---

1990); *Clark v. Superior Ins. Co.*, 209 Ga. App. 290 (1993). Here, however, DeKalb County is not the defaulting insured, but is a third party ("an additional insured," as well as a governmental agency.

[12] Because a claim for the breach of the duty of good faith and fair dealing is derivative of a viable breach of contract action, this dependent claim is due to be dismissed. *See Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) (Thrash, J.) (*relying on Alan's of Atlanta, Inc. v. Minolta*

too bad.  The plaintiff was a probation officer who rightfully

expected that the elevators he and members of the public used in

county buildings were being safely maintained.  He also likely

assumed, should the latter not have occurred, that there would at

least be a meaningful mechanism for him to seek compensation for any

injury.  The plaintiff suffered a serious injury when the County's

elevator malfunctioned while he was a passenger.  Given the defunct

status of the irresponsible elevator contractor hired by the County

and the inadequate safeguards in place to assure compensation for a

person injured by this contractor, plaintiff's legal claims were

essentially dead on arrival.  He was let down by the failure of the

State to provide adequate regulations, by the failure of DeKalb

County to insist that the insurance policy agreement require that it

be notified prior to cancellation of the insurance policy with Metro,

and by the indifference of the defendant insurer to the plight of the

public upon the cancellation of the policy without any notification

to the County.

---

*Corp.*, 903 F.2d 1414 (11th Cir. 1990))(plaintiff must set forth facts
showing a breach of an actual term of an agreement to state a claim
for the breach of the implied covenant of good faith and fair
dealing).  Furthermore, a claim for the bad faith failure to pay
insurance proceeds arises under O.C.G.A. § 33-4-6, and plaintiff has
not explored this independent claim in any of its Counts.
Defendant's Motion is **GRANTED** with respect to plaintiff's claim for
the breach of good faith and fair dealing, as well as any potential
claim for bad faith.

AO 72A
(Rev.8/82)

Taking these lapses one by one, the Labor Department Rule that purports to require that an elevator contractor have liability insurance is actually a toothless tiger. Because there is no requirement that a contractor maintain insurance, after it has obtained insurance, nor a requirement that the party for whom the contractor is doing the work be notified if the insurance is ever cancelled, the rule does little more than lull the unsuspecting. A regulation and/or statute that addressed both matters would go a long way toward preventing what seems to be an unfortunate outcome in this case.

As to DeKalb County, it could have more effectively protected the public had it insisted that the elevator contractor's liability policy include a provision that the county be notified in advance of cancellation. As it were, the policy that DeKalb accepted did little to guarantee that its contractor would have liability insurance, as the policy permitted cancellation without notification to the County. The absence of such a provision meant that what happened here--the nonpayment of premiums by the contractor, followed by cancellation of the policy with no notice to the County, and the continuing "work" by the contractor--was entirely predictable.

Finally, as to defendant Scottsdale Insurance Company, it is true that its form policy provisions did not require it to notify the additional insured party, DeKalb County, of any cancellation of the policy. That notification was not required, as a matter of

21

contractual responsibility, however, does not mean that the insurer should not have attempted to let DeKalb County know what had happened. Certainly, no one is alleging that defendant colluded with Metro to enter into a policy agreement that Metro would default on, almost from the outset. The result here is the same, though, as if that had been the intent. If civic responsibility were not a sufficient motivating factor, prudence should have suggested that the defendant could have avoided the expense of the present law suit had it simply copied the County on the cancellation notification.

None of these things happened, and the plaintiff is now left uncompensated for his present claims.

## III. __PROMISSORY ESTOPPEL__

Count II is based on the theory of promissory estoppel under O.C.G.A. § 13-3-44. (Am. Compl. [5] at ¶¶ 73-79.) Plaintiff argues that the issuance of the Certificate of Insurance to DeKalb County was a promise to provide liability insurance coverage to Metro for the entire policy period. (*Id.* at ¶ 74.) Defendant allegedly knew, or should have known, that DeKalb County would rely on this promise of insurance, and DeKalb County did in fact rely on this promise to its detriment. (*Id.* at ¶¶ 75-76.) Plaintiff alleges that injustice can only be avoided by enforcing the promise. (*Id.* at ¶ 77.)

A claim for promissory estoppel under Georgia law requires that:

(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiff relied on such promise to their detriment; and (4) an injustice can only be avoided by the

22

> enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

*Mariner Healthcare, Inc. v. Foster*, 280 Ga. App. 406, 412 (2006); O.C.G.A. § 13-3-44. One of the predicates to recovery under this cause of action is that the defendant made a promise to the plaintiff, or made a promise "which the promisor should reasonably expect to induce action or forbearance on the part of...a third person." O.C.G.A. § 13-3-44; *Mooney v. Mooney*, 245 Ga. App. 780, 783 (2000)("An essential element of a claim for promissory estoppel is that the defendant made certain promises to the plaintiff.")

Plaintiff contends that defendant, by issuing the Certificate of Insurance to DeKalb County, certified or promised to DeKalb County that Metro was covered by liability insurance from May 9, 2006 to May 9, 2007. (Pl.'s Resp. Br. [22] at 13-14.) Because plaintiff is a purported third-party beneficiary with respect to the Insured Contract's requirement for a Certificate of Insurance, defendant argues that defendant should have reasonably expected DeKalb County and plaintiff to rely on said promise. (*Id.*)

Plaintiff's position is flawed. First, plaintiff's purported status as a third-party beneficiary requires a valid contract, and promissory estoppel is not available where a plaintiff seeks to enforce a written contract. *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1326 (11th Cir. 2005). Invoking his alleged status as a third-party beneficiary of the insured contract--a relationship necessarily

23

derived from a contract--at the same time as he makes an equitable claim constitutes a perplexing conflation that does not appear to find any support in Georgia law.

Plaintiff's status aside, his theory of promissory estoppel, hinged on an "indirect" promise, cannot overcome the absence of factual allegations rendering it plausible that the defendant's behavior could reasonably be expected to induce action or forbearance on the part of plaintiff. While a promise directed to one entity, which is then relayed to a third party, can support a claim for promissory estoppel, the promisor must have expected the third party to rely on its promise. *See F & W Agriservices, Inc. v. UAP/Ga. Ag. Chem., Inc.*, 250 Ga. App. 238, 241 (2001). Inherent in the requirement that the promisor expect the third party to rely on its promise is the notion that the third party will somehow become aware of the alleged promise.

Plaintiff's Amended Complaint does not offer any plausible basis upon which defendant could expect some sort of reliance from a third party based on the Certificate of Insurance. Plaintiff does not allege, for example, that defendant was aware that DeKalb County would relay to plaintiff the "promise" that the elevator contract was insured by reason of the Certificate of Insurance. Further, there is no allegation that there was any way for plaintiff to know about the Certificate of Insurance from another source. Without some evidence that the promise, by way of the issuance of the Certificate of

24

Insurance, would ever reached plaintiff, it is not plausible that defendant would have expected plaintiff to rely on that promise.[13]

The Amended Complaint also falls short of showing that plaintiff's actual reliance is plausible. Plaintiff does not allege that he, as an individual, ever relied on the purported promise to maintain liability insurance. While plaintiff's "indirect" reliance is mentioned, there is no allegation, for example, that plaintiff would have behaved differently were he aware that Metro was uninsured. Without reliance, there is no promissory estoppel. *Fid. & Deposit Co. of Md. v. W. Point Constr. Co.*, 178 Ga. App. 578, 580 (1986). The absence of such facts makes plaintiff's purported reliance on the Certificate of Insurance insufficient to nudge plaintiff's claims from the speculative to the plausible.

Judgment on the pleadings is warranted for an additional reason. Plaintiff contends that the issuance of the Certificate of Insurance was a promise to provide coverage from May 9, 2006 to May 9, 2007. He also agrees that this is a case where it is undisputed that defendant cancelled the liability insurance policy during the same

---

[13] The Court also has serious doubts that the issuance of the Certificate of Insurance is sufficiently definite to support a claim for promissory estoppel. *See Discrete Wireless, Inc. v. Coleman Tech., Inc.*, 422 Fed. App'x 777, 782 (11th Cir. 2011)(rejecting argument that email would support promissory estoppel claim where it was equivocal about timing of performance, but still indicated a desire to perform). While the Certificate of Insurance may purport to suggest potential coverage for a year, the mere issuance of this certificate would offer no detail about the particulars of coverage or the circumstances under which it might be cancelled.

AO 72A
(Rev.8/82)

term.  (Pl.'s Resp. Br. [22] at 15.)  Georgia law bars a claim for promissory estoppel in the face of an enforceable contract.  *Am. Casual Dining, L.P.*, 426 F. Supp. 2d at 1371 (prohibiting equitable claim of promissory estoppel where existence of contract was undisputed).  As plaintiff has acknowledged the validity of the Scottsdale Policy, that policy, not the purported issuance of the Certificate of Insurance, would trump any promise between the parties regarding coverage.  At the same time, Georgia law will not allow a Certificate of Insurance to create coverage where none existed when the loss occurred.  *Raintree Trucking Co., Inc. v. First Am. Ins. Co.*, 245 Ga. App. 305, 306 (2000).  Thus, when the Scottsdale Policy was cancelled, the Certificate of Insurance did not create any coverage for injuries caused by Metro.

Plaintiff's efforts to avoid both of these doctrines reveals that, in essence, he is actually arguing that because of the earlier representation of coverage, defendant is estopped from disputing coverage.  *Wilder v. Jefferson Ins. Co.*, 252 Ga. App. 563, 566-67 (2001)(rejecting argument that defendant's knowledge of coverage request and issuance of insurance certificate waived or estopped denial of coverage).  The doctrines of waiver and estoppel cannot be used to "make a new contract, or to radically change the terms of the policy so as to cover additional subject-matter, or causes of loss, or causes of loss expressly excluded from the coverage of the policy."  *Am. Interstate Ins. Co. v. Smith*, 537 F. Supp. 2d 1378,

26

1382 (S.D. Ga. 2008); *Wilder*, 252 Ga. App. at 566-67. Applying these doctrines under the circumstances of this case would require an "[e]xtension of the applicable period during which the insurance was in force[, which] would certainly increase the risks covered by the terms of the policy." *Harper v. Liberty Nat'l Life Ins. Co.*, 645 F. Supp. 260, 263 (M.D. Ga. 1986). Thus, for this additional reason, plaintiff's claim for promissory estoppel must fail.

Plaintiff also makes a plea to the conscience of the Court. He decries the inequity in defendant's ability to issue a certificate of insurance, fully aware that an additional insured and third party is relying upon it, and then cancel the insurance without notifying the certificate holder. (Pl.'s Resp. Br. [22] at 18-19.) As noted above, the Court shares plaintiff's dismay that an insurer could cancel its insurance without notifying an additional insured and that the defendant could leave posted on elevators certificates of insurance that it did not intend to honor. As explained earlier, it is the legislature that needs to act to correct a problem that seems to pose an easy fix. Nonetheless, for the above reasons, defendant's Motion for Judgment on the Pleadings [13] is **GRANTED** as to Count II.

## IV.  NEGLIGENCE

Count III is for negligence. Plaintiff claims that contractual and statutory obligations created a duty in defendant to either maintain coverage or notify DeKalb County of the Scottsdale Policy's cancellation. (Am. Compl. [5] at ¶ 81.) Because defendant failed to

maintain coverage, or at least notify DeKalb County or plaintiff that Metro's coverage was cancelled, DeKalb County retained Metro when it otherwise would have demanded new coverage or obtained a new insured contractor. (*Id.* at ¶ 84.) Thus, defendant's negligence allegedly deprived plaintiff of insurance proceeds he would have otherwise been entitled to, had Metro's status been conveyed. (*Id.* at ¶¶ 85-87.)

A legal duty is a prerequisite to an action for negligence. *Arthur Pew Constr. Co., Inc. v. First Nat'l Bank*, 827 F.2d 1488, 1492 (11th Cir. 1987). Whether a party owes a legal duty to another is a question of law. *DaimlerChrysler Motors Co., LLC v. Clemente*, 294 Ga. App. 38, 47 (2008). Further, a defendant's "mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of contract may give rise to a tort cause of action only if the defendant also breached an independent duty created by statute or common law." *Doty Commc'ns, Inc. v. L.M. Berry & Co.*, 417 F. Supp. 2d 1355, 1358 (N.D. Ga. 2006); *DaimlerChrysler Motors Co., LLC*, 294 Ga. App. at 47 ("A legal duty sufficient to support liability in negligence can be predicated on a duty imposed by a valid statutory enactment of the legislature.").

As explained above, O.C.G.A. § 33-22-13(d) does not demand that defendant provide notice of cancellation to plaintiff. As such, defendant owed no legal duty arising from this statute to notify plaintiff of the cancellation. Defendant also did not owe any

28

contractual duty to notify plaintiff or to maintain insurance.[14]  *See*
O.C.G.A. § 51-1-8 ("Private duties may arise from...relations created
by contract, express or implied.").  Any breach regarding notice or
maintenance of insurance would be governed by the Scottsdale Policy.
This is not an independent duty created by contract or law, but is
instead just a part of the contractual arrangement between the
parties.  *Doty Commc'ns, Inc.*, 417 F. Supp. 2d 1355, 1358 (N.D. Ga.
2006).  As such, defendant owed no duty to plaintiff to provide
notice of cancellation or to maintain insurance under the Insured
Contract.  Furthermore, as explained above, the contract was never
breached.

Plaintiff's argument stakes out a novel position.  He argues
that property owners owe a heightened duty of care to those who use
their elevators and, because defendant insurer "undertook (for a
profit) the <u>duty</u> to provide liability insurance coverage for an
elevator contractor," defendant should have maintained the insurance
or notified the property owner of the insurance's cancellation,
notwithstanding the absence of any statutory or contractual

---

[14]  To the extent plaintiff relies on the Notice of Cancellation
submitted by Charleston Premium Finance Company to defendant, as a
contractual basis to provide notice to DeKalb County, there is no
indication that this notice of cancellation was ever incorporated
into the contracts at issue in this case.  Further, plaintiff has not
claimed to be a third-party beneficiary of the Premium Finance
Agreement from which the notice arose.  *See Gill Plumbing Co. v.
Imperial Premium Fin. Co., Inc.*, 213 Ga. App. 754, 757 (1994)(limited
power of attorney given by insured to an insurance premium finance
company does not create fiduciary relationship between the insured
and the company).

AO 72A
(Rev.8/82)

provisions requiring this. (Pl.'s Resp. Br. [22] at 21.) In effect, plaintiff's argument calls on the Court to create a new legal duty, heretofore unrecognized in Georgia law. Although the Court agrees that notification is a sound requirement, it is the Georgia General Assembly that must make this change. The Court, on its own, cannot so expand the reach of tort duties arising under Georgia law.

Defendant's Motion for Judgment on the Pleadings [13] as to plaintiff's claim for negligence is therefore **GRANTED**.

## V.    ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11

Count IV is for recovery of the expenses of litigation under O.C.G.A. § 13-6-11. (Am. Compl. [5] at ¶¶ 89-90.) Expenses of litigation are available under O.C.G.A. § 13-6-11 only when plaintiff has an underlying claim. *Gilmour v. Am. Nat'l Red Cross*, 385 F.3d 1318, 1324 (11th Cir. 2004). Because defendant is entitled to judgment on the pleadings as to all of plaintiff's Counts, defendant's motion [13] as to plaintiff's Count IV is **GRANTED**.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Judgment on the Pleadings [13] is **GRANTED**.


SO ORDERED, this 16th day of MARCH, 2012.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

30